JAMES R. GORDON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gordon v. Commissioner
Docket No. 23409-90
United States Tax Court
T.C. Memo 1992-449; 1992 Tax Ct. Memo LEXIS 471; 64 T.C.M. (CCH) 420; August 10, 1992, Filed Decision will be entered under Rule 155. For Petitioner: Richard L. Heaton. For Respondent: Paul B. Burns. COHEN
COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined deficiencies of $ 4,682 and $ 6,587 in petitioner's Federal income tax for 1985 and 1986, respectively. After concessions, the sole issue for decision is whether petitioner is entitled to deductions for depreciation, insurance, and slip rent with respect to his boat for 1985 and 1986. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT All of the facts have been stipulated, and the stipulated facts are incorporated as our findings by this reference. James R. Gordon (petitioner) resided in Huntington Beach, California, at the time he filed his petition. On or about September 9, 1982, petitioner purchased a 38-foot Catalina sailboat with auxiliary motor (the boat). On or about March 1, 1985, petitioner began operating a boat hull-cleaning and maintenance business, "Best Hull Cleaning" (BHC), as a sole proprietorship. *472 BHC used mechanical cleaning and scraping tools, air compressors, chemical solvents, paint, paintbrushes, spray guns, paint rollers, and scuba equipment (the equipment) in the provision of its services. When the equipment was not in use, petitioner stored it either aboard the boat or in the luggage compartment of the 1979 Jeep Wagoneer that he owned (the Jeep). BHC serviced boats berthed at various locations in California. Petitioner did not use the boat to transport himself or the equipment to the locations where BHC provided its services. Instead, except when the equipment was already in the Jeep, petitioner would retrieve the equipment from the boat, load it into the Jeep, and drive to the location where the services were to be provided. Petitioner used the main cabin of the boat as BHC's principal office. Petitioner stored BHC's books and records aboard the boat. He also met with current and prospective customers of BHC aboard the boat. Beginning on or about March 13, 1985, petitioner had telephone service aboard the boat. The boat's telephone number was listed in petitioner's name in the local telephone directory. The telephone aboard the boat was answered by an answering *473 machine when petitioner was not aboard the boat. The brochures and other promotional material used by petitioner to promote BHC's services listed both petitioner's home telephone number and the number of the telephone aboard the boat. BHC's mailing address was petitioner's home address in Huntington Beach. In 1985, petitioner took several current or prospective customers of BHC on an overnight cruise on the boat to the vicinity of Ensenada, Baja California, Mexico. The purposes of the cruise were to view the finish of the annual Newport Beach-to-Ensenada yacht race, to entertain and socialize with the invitees, to demonstrate to prospective customers of BHC the performance advantages that result from regular hull cleaning, and to maintain good relations with existing customers of BHC. In 1986, petitioner purchased a listing for BHC in a commercial directory of marine service providers. That listing included the number of the telephone aboard the boat but not petitioner's home telephone number. During 1985 and 1986, the boat was berthed at the Shoreline Marina in Long Beach, California. At various times during 1985 and 1986, petitioner held "open house" functions with food *474 and beverages aboard the boat, which was anchored in its berth. The purposes of these functions were to entertain and socialize with other boat owners whose boats were berthed at the Shoreline Marina, to provide information concerning BHC to prospective customers, and to maintain good relations with existing customers of BHC. Petitioner reported the income and expenses of BHC for 1985 and 1986 on Schedules C attached to his Federal income tax returns for those years. Among the expenses for which petitioner claimed deductions were depreciation, insurance, and slip rent with respect to the boat. In the notice of deficiency, respondent disallowed those deductions. OPINION Section 274(a) provides: (1) In general. -- No deduction otherwise allowable under this chapter shall be allowed for any item -- (A) Activity. -- With respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation * * *, or (B) Facility. -- With respect to a facility used in connection with an activity referred to in subparagraph (A). Entertainment is defined as "any activity which is of a type generally considered to constitute entertainment, amusement, *475 or recreation". Sec. 1.274-2(b)(1)(i), Income Tax Regs.Section 1.274-2(b)(1)(ii), Income Tax Regs., provides: An objective test shall be used to determine whether an activity is of a type generally considered to constitute entertainment. Thus, if an activity is generally considered to be entertainment, it will constitute entertainment for purposes of this section and section 274(a) regardless of whether the expenditure can also be described otherwise, * * *. This objective test precludes arguments such as that "entertainment" means only entertainment of others or that an expenditure for entertainment should be characterized as an expenditure for advertising or public relations. However, in applying this test the taxpayer's trade or business shall be considered. Thus, although attending a theatrical performance would generally be considered entertainment, it would not be so considered in the case of a professional theater critic, attending in his professional capacity. Similarly, if a manufacturer of dresses conducts a fashion show to introduce his products to a group of store buyers, the show would not be generally considered to constitute entertainment. However, if an *476 appliance distributor conducts a fashion show for the wives of his retailers, the fashion show would be generally considered to constitute entertainment. Respondent contends that the boat was a "facility used in connection with entertainment" and that, therefore, petitioner's expenses with respect to the boat are not deductible. Petitioner contends that the boat was not an "entertainment facility" because use of the boat was not ancillary to a different and unrelated business of petitioner but was "an integral and natural part of a business in a normal and non-entertainment business context". Petitioner compares himself to a tugboat captain whose boat is essential to his business. Petitioner's analogy is unpersuasive. BHC was in the business of cleaning and maintaining boat hulls. Petitioner used the boat to store BHC's books and records, sometimes stored the equipment used by BHC in the provision of its services aboard the boat, and met with and entertained current and prospective customers of BHC aboard the boat. Petitioner did not, however, use the boat to transport himself or the equipment to the locations where BHC provided its services or as a piece of equipment for cleaning *477 and maintaining boat hulls. Petitioner's business, therefore, did not require the use of the boat as would a tugboat captain's use of a tugboat. Petitioner argues that he should be permitted to deduct his expenses with respect to the boat because the boat was an income-producing asset of BHC and was not used for the purpose of allowing petitioner to deduct personal expenses. That the boat may have been an asset useful to BHC's business does not create an exception to the disallowance provision of section 274(a)(1)(B). In stating the reasons for the 1978 amendment of section 274(a)(1)(B) by section 361 of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2763, 2847 (the 1978 amendment), it was recognized "that some legitimate business expenses may be incurred with respect to entertainment facilities," but such expenses were nevertheless disallowed as business deductions in order to curb the significant opportunities for abuse that had existed under prior law. S. Rept. 95-1263 (1978), 1978-3 C.B. (Vol. 1) 321, 472. Petitioner argues that the boat was not an entertainment facility, quoting that "a facility is not considered to be an 'entertainment facility' if it *478 is used only incidentally during the taxable year in connection with entertainment, and that use is insubstantial in relation to its business use." S. Rept. 95-1263, supra, 1978-3 C.B. (Vol. 1) at 471. This incidental use exception applied only prior to the 1978 amendment of section 274(a)(1)(B). The 1978 "amendment indicates that any use of the facility, no matter how small, in connection with entertainment is fatal to the claimed deduction." Ireland v. Commissioner, 89 T.C. 978, 983 (1987) (fn. ref. omitted). Because the boat was a facility used in connection with entertainment under section 274(a)(1)(B), petitioner's expenses with respect to the boat are not deductible. To reflect the foregoing and concessions by the parties, Decision will be entered under Rule 155.